HOWARD MARTIN, ADMR., v. H. S. MORAN, ADMR.
No. 1996.

**Community Property—Life Insurance Policy.**

A husband took out an endowment life insurance policy on his life, payable "as directed by will." He paid the premiums thereon out of community funds, and by his will made the proceeds of the policy payable to his own estate. Held, that the proceeds were community estate, one-half of which belonged to the wife.

APPEAL from Parker.   Tried below before Hon. J. W. PATTERSON.

*I. N. Roach* and *G. A. McCall,* for appellant.

*H. S. Moran* and *H. L. Moseley,* for appellee.

HEAD, ASSOCIATE JUSTICE.—The first question presented for our decision in this case is, whether the money collected upon an endowment insurance policy upon the life of the husband, payable "as directed by will," is community property of the husband and wife or separate property of the husband, he having left a will making disposition thereof, and it being made to appear that the premiums were paid out of community funds.   We are not aware that the question has been directly decided, either in this State or elsewhere.

If the contract between the husband and the company had been in the form of a note payable as directed by his will, instead of in the form of an ordinary insurance policy, it seems to us clear that such note would be property acquired during the marriage by the connubial partnership.   That the husband could not use the community property in acquiring contracts of that kind and dispose of them by will as his separate property, seems too clear for argument.   If, however, the husband should use community property in acquiring a note payable at his death to A (a third party), other questions would arise between A and the wife; such, for instance, as whether or not the consideration which moved from A to the husband was such as to make the disposition so made by the latter of the community property a legitimate exercise of the power given him by law over it during the marriage, or was it an attempted fraud upon the rights of the wife.   But as to those claiming under the husband, A would be the beneficiary in the note, and entitled to collect it.   The transaction would be in effect a gift or transfer by the husband of his interest in the note to A.

It is upon this ground (the right of the husband to give away his interest in the community property) that insurance policies paid for by the husband out of community property and made payable to the wife have been held to be her separate property.   Evans v. Opperman, 76 Texas, 299.   The same principle has been held to apply to a policy made payable to the heirs of the insured in a contest between them and his creditors, no issue of fraud being raised.   Mullins v. Thompson, 51 Texas, 7.

That there is nothing in the words "insurance policy" which calls for the application of principles of law to contracts of that kind different from others having a like effect, seems to us must be conceded.   The fact that it is an insurance company that promises to pay $3000 upon the death of the husband as directed by his will cannot require a disposition of that money different from that which would be made had it been collected upon a similar contract entered into by a private individual.   In either case, the contract to pay would be property acquired for a valuable consideration during the marriage, and as against

the wife the devisees of the husband could acquire no greater interest therein than they could by a like devise acquire in other property obtained in the same way.

We appreciate the force of the suggestion that the devisee named by the will is practically the same as if that person had been designated as the beneficiary in the contract itself; but it must be borne in mind that the husband is only given the power to dispose of the community property during the existence of the marriage relation, and has no right to control the wife's share by his will. The will speaks from the date of the death, while the contract speaks from the time the name of the beneficiary is inserted.

But even if it be conceded that the naming of the beneficiary in a will is in law the same as if this had been done in the contract, would not the wife be entitled to one-half the proceeds of this policy? It can hardly be said that the husband, by virtue of the power given him to dispose of the community property, has the unlimited right to use it in buying insurance policies and giving them to third parties. Neither can it be said that the wife should be restricted to her interest in the premiums paid for the policies, because she has as much interest in the profits made by the husband's trades as she has in the consideration paid. She is required to share the losses he makes, and as part compensation is given the right to participate in the gains.

In Stramler v. Coe, 15 Texas, 215, it is said: "No consent of the wife is necessary to a valid alienation of such (community) property by the husband. But excessive or capricious donations and sales, made with the intent to defraud the wife, would be void; and she would be entitled to her action against the property of the husband and against third possessors." Also see Wright v. Hays, 10 Texas, 133, and Scott v. Maynard, Dallam, 548.

It seems to us that for the husband to purchase insurance policies with community property and make them payable as directed in his will, or to a third person, for the purpose of making them his separate property, would be a disposition in fraud of the rights of the wife within the meaning of these decisions.

Again, the husband in this case in his will named as the beneficiaries in the policies his own executors as such, and directed the manner in which the money was to be invested (in lots and houses), as though it were a part of his general estate. We think this evidences an intention to make the proceeds of these policies a part of his estate, the same as the other property disposed of by him. In other words, the practical effect was to make them payable to his estate. It is to be presumed, in the absence of evidence, that full value was paid out of the community property to the insurance company for the policies; and if so, we would be loth to hold that the husband has the power thus to enlarge his separate estate at the expense of his wife. The husband can give his interest in the community property to another, but he can not give his wife's interest to himself.

The only other question presented in the briefs is the alleged error of the court in finding that Mrs. Levy did not elect to take under her husband's will.

No statement of facts accompanies the record. The only exception reserved to the action of the court is in the concluding sentence of the judgment, in these words: "To all of which rulings of the court the defendant excepts, and in open court gives notice of appeal," etc. From the findings of fact, it seems that the $3000 collected upon these policies was about all the property the Levys owned. This the husband by his will directed to be invested in a lot in Weatherford and in the erection of five houses thereon, one of which the wife and their only son were authorized to occupy during the life of the former, who was also to be paid $25 per month from the rent of the others.

It also appears that the lot was purchased and the houses erected as directed in the will, but the wife lived in one and appropriated all the rents from the others during her life. It does not appear whether she did this in recognition of the will or in opposition thereto, nor that she was at any time advised or aware of her community rights in this money. The court found from all the evidence that she never elected to take under the will, and from the meagre statements contained in the findings of fact we are unable to affirm that error was committed.

It may be that the wife, in the absence of this will, would have been entitled to have had set aside to her by the Probate Court all of this money, in lieu of a homestead and exempt personal property, and that she did not in fact receive more under the will than she would otherwise have been entitled to. The fact that she appropriated all the rent instead of confining herself to the $25 given by the will, tends to the conclusion that she repudiated rather than accepted the will. The law upon the subject of estoppel by election in this State is carefully stated in Smith v. Butler, 85 Texas, 126, and we will not attempt to add to what is there said.

*Affirmed.*

Delivered November 9, 1895.